IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENTRE NAX KARAGE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-604-M |
| | § | |
| FIRST ADVANTAGE CORPORATION | § | |
| d/b/a SAFE ADVANTAGE SERVICES d/b/a | § | |
| WWW.CRIMINALBACKGROUND.COM, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Docket Entry #21]. For the reasons explained below, the Motion is **GRANTED** in part and **DENIED** in part.

I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Entre Nax Karage ("Karage") was arrested in 1994 for the murder of his then-fiancée, Nary Na. In 1997, he was found guilty of murder and sentenced to life in prison. In 2005, DNA evidence collected from the crime scene exonerated Karage of the murder, and he received a pardon from the Governor of Texas. On January 12, 2006, Karage obtained an expunction order from a Dallas County criminal district court.

In March 2008, Karage sought employment through Verion Staffing Services ("Verion"), a temporary employment agency. As part of the application process, Verion requested a criminal background report on Karage from Defendant First Advantage Corporation, d/b/a Safe Advantage Services, d/b/a www.criminalbackground.com ("First Advantage"). The criminal background report that First Advantage provided to Verion stated that Karage had been thrice arrested for, and charged with, the murder of Na. The report further noted another arrest and

charge of Karage for murder in 1979, when Karage was ten years old and still living in Cambodia.

Verion denied Karage employment on the basis of this report, and persisted in its denial even after Karage provided the agency with copies of his executive pardon and the expunction order.

Karage's suit against First Advantage was removed to this Court on April 2, 2009.  First Advantage now moves to dismiss Karage's First Amended Complaint for failure to state a claim.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[1]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[2]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[3]  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[4]

## III. ANALYSIS

A.  Libel

To recover on a claim for libel under Texas law, a plaintiff must prove that the defendant (1) published (2) a false defamatory statement in written or printed material (3) to a third party

---

[1] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).
[2] *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[3] *Twombly*, 550 U.S. at 570.
[4] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.

about the plaintiff.[5] A false statement that charges a person with the commission of a crime is libel per se.[6]

First Advantage does not deny as false the portion of its report stating that Karage was arrested and charged for murder in 1979. However, First Advantage argues that its statements regarding Karage's arrests for Na's murder were not technically false, and thus cannot constitute libel because truth is an affirmative defense to libel.[7]

This argument cannot stand. Even if individual statements considered in isolation are literally true, they can still convey false and defamatory messages by omitting facts.[8] A publication as a whole may be defamatory if it creates a false impression by omitting material facts,[9] and this determination is based on how a person of ordinary intelligence would perceive the entire statement.[10] A Texas court has found that readers could reasonably infer, from a newspaper advertisement listing the names of individuals accused of committing crimes against children, that the individuals listed had actually committed the crimes of which they were accused.[11] Similarly, stating that a person has been thrice arrested for murder, when that person has been exonerated of that murder, conveys the false and defamatory message to the recipient of

---

[5] *KTRK Television v. Felder*, 950 S.W.2d 100, 105 (Tex. App.—Houston [14th Dist.] 1997, no writ).
[6] *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (citations omitted).
[7] *See* First Advantage's Motion at 4; Tex. Civ. Prac. & Rem. Code § 73.005 (Vernon 2005) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action."); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (holding that truth is an affirmative defense to slander).
[8] *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114-15 (Tex. 2000) (citations omitted); *Brock v. Tandy*, No. 2:08-CV-400, 2009 Tex. App. LEXIS 5171, at *11 (Tex. App.—Fort Worth, July 2, 2009, pet. denied).
[9] *See Turner*, 38 S.W.3d at 117-18; *Brock*, 2009 Tex. App. LEXIS at *11; *Express Pub. Co. v. Gonzalez*, 350 S.W.2d 589, 592 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.) ("Although the truth of an alleged libel may be proven as a complete defense, it is not a defense to show that a statement contained in a publication, if taken alone, is literally true, when other facts are omitted which plainly refute the false impression of the partial statement. A statement is not true or even substantially true if, by implication, an entirely untrue impression is made by omission of part of the facts.").
[10] *Turner*, 38 S.W.3d at 115; *Brock*, 2009 Tex. App. LEXIS. at *11 (citations omitted).
[11] *See Freedom Commc'ns, Inc. v. Coronado*, 296 S.W.3d 790, 801 (Tex. App.—Corpus Christi 2009, n.w.h.).

ordinary intelligence that the person has actually committed the murder.[12] Such misinformation would tend to injure and impeach the defamed person's reputation.[13]

First Advantage next argues that Karage's criminal background report is subject to a qualified privilege. However, a defense of qualified privilege cannot be asserted as grounds for dismissal under Rule 12(b)(6).[14] A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contested issues of fact, the merits of a claim, or the applicability of defenses.[15]

First Advantage's Motion to Dismiss is thus DENIED as to Karage's common law libel claim.

### B. Texas Government Code Claim

Karage also claims that First Advantage violated the Texas Government Code provision prohibiting the dissemination of criminal records subject to expunction:

> A private entity that compiles and disseminates for compensation criminal history record information shall destroy and may not disseminate any information in the possession of the entity *with respect to which the entity has received notice* that . . . an order of expunction has been issued . . . ."

TEX. GOV. CODE ANN. § 411.0851(a)(1) (emphasis added).

---

[12] *Cf. Express Pub. Co.*, 350 S.W.2d at 592 (holding that the literally true statements that a plaintiff had been charged with fraud in connection with alienation of real property, and that a court had returned the land to the rightful owner, falsely implied that the court had sustained the charge against the plaintiff, who had been dismissed from the case and whose name was not even mentioned in the amended petition).
[13] *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005) (defining libel).
[14] *See Cretella v. Kuzminski*, No. 3:08-CV-109, 2008 WL 2227605, at *10 (E.D. Va. May 29, 2008) (holding that "whether a defendant in a defamation action is protected by a privilege is not a matter to be resolved in the context of a motion to dismiss") (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)); *Davis v. Kroger Co.*, 2008 U.S. Dist. LEXIS 26496, at *10 (N.D. Tex. Mar. 31, 2008) (Lindsay, J.) (determining in the context of defamation claims that "whether Defendants are entitled to a qualified privilege is a matter that should be resolved by summary judgment, not at the pleadings stage"); *50-Off Stores v. Banque Paribas (Suisse) S.A.*, 1997 U.S. Dist. LEXIS 11136, at *21 (W.D. Tex. May 20, 1997) ("In a case involving absolute privilege, a motion to dismiss may be granted if the privilege is apparent on the face of the complaint, but a defense of qualified privilege cannot be asserted by way of a motion to dismiss." (citation omitted)).
[15] *See Martin*, 980 F.2d at 952 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

First Advantage correctly points out that Karage failed to allege that First Advantage had notice of the order of expunction when it reported the criminal history information to Verion. The Motion to Dismiss is therefore GRANTED as to Karage's statutory claim, with leave to replead the necessary element of notice.[16]

First Advantage's Motion to Dismiss Karage's statutory claim is thus GRANTED.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's common law libel claim and **GRANTED** as to Plaintiff's statutory claim, with leave to replead.

**SO ORDERED.**

March 22, 2010.

Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

---

[16] The word "notice" is not defined in this subchapter, and the statute does not specify a method of notice to be utilized. Nor is the Court aware of any Texas cases interpreting this statute. However, the doctrine of constructive notice may apply. *See Little v. Smith*, 943 S.W.2d 414, 421 (Tex. 1997) ("Constructive notice is usually applied when a person knows where to find the relevant information but failed to seek it out."); *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 388 (Tex. 1965) (holding that, under certain circumstances, "one having the means of knowledge may be held to the same standard of responsibility as one possessing conscious knowledge . . . . It has been determined by Texas authority that imputed actual notice carries with it the same legal consequences as conscious knowledge.").